**STATE of Missouri, Respondent,**

v.

**Jimmie SANDERS, Appellant.**

**No. 42374.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 2, 1981.

Motions for Rehearing and/or Transfer to Supreme Court Denied July 10, 1981.

**347**

Robert C. Babione, Public Defender, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

DOWD, Judge.

Defendant, Jimmie Sanders, was found guilty by a jury of second degree burglary in violation of Section 560.045 RSMo 1969. Defendant was sentenced under the Second Offender Act to a term of ten years imprisonment. He appeals.

On November 8, 1977, at approximately 7:30 a. m., Ross and Goldie Cornish left their home located in the City of St. Louis. They noticed nothing unusual about their home before leaving. Mrs. Cornish returned to the home between 2:30 and 3:30 p. m. She discovered that the front door had been broken in, and drawers in bedroom cabinets had been dumped out on the floor. A gun rack located in the basement had been torn off the wall. Numerous items including jewelry, guns, radios and coins were missing.

The police were notified and looked for fingerprints throughout the house. One fingerprint was found in the lower front portion of the gun rack that had been torn from the basement wall. The recovered fingerprint was compared to defendant's fingerprints. There was expert testimony that the fingerprint found on the gun rack was that of defendant Jimmie Sanders.

Defendant presented alibi testimony consisting of the depositions of defendant's father, Douglas Sanders, and of Ella Riley. Mr. Sanders and Ms. Riley both lived in Memphis, Tennessee at the time of trial. These individuals stated that defendant was in Memphis during October, November and December of 1977.

On this appeal defendant contends the trial court erred in the following respects: (1) allowing the prosecutor to argue an adverse inference against defendant for failing to call his sister as a witness, (2) refusing to admit testimony of a defense witness that defendant failed to appear in traffic court in St. Louis County on October 3, 1977, (3) admitting fingerprint cards that had portions covered with tape to prevent the jury from reading information on the cards, (4) admitting an enlarged photograph of a fingerprint which was not the defendant's fingerprint, (5) failing to sustain defendant's motion for judgment of acquittal at the close of all the evidence because the evidence adduced was insufficient to support the conviction, and (6) ruling that the number of peremptory challenges for the parties would be governed by Section 546.-180, as amended by the Laws of 1979, even though this provision was not in effect at the time of the commission of the offense.

Defendant first contends the trial court erred in allowing the assistant prosecuting attorney to argue an adverse inference against defendant for failing to call his sister, Helen Sanders, as a witness. There was alibi testimony from other defense witnesses that Ms. Sanders had driven defendant to Memphis, Tennessee in October, 1977 and was seen with him in Memphis in November, 1977. During closing argument the prosecutor stated that "[t]he defendant knows where his sister is and she's in St. Louis and if he wanted to bring her in he could have."[1] When a witness is

[1.] The prosecutor also argued the following:

"And another thing, both depositions mentioned the fact that Jimmie Sanders was driven down to Memphis by his sister and that he came back from Memphis with his sister and that his sister lives in St. Louis and his sister is

the only one who is available and she's not here. Why not? She's in St. Louis. She doesn't have those flimsy excuses that these other people give you on paper.

She's not here. Why not? Because I could cross-examine her and I could tear her story

more available to one party than to another and would appear from the facts and circumstances to be reasonably expected to give testimony in that party's favor, an unfavorable inference may be argued from the failure to produce the witness. The adverse inference may not be argued, however, where the testimony of the uncalled witness would be cumulative or inadmissible. *State v. Brooks*, 567 S.W.2d 348, 351 (Mo.App.1978); *State v. Ganaway*, 556 S.W.2d 67, 69 (Mo.App.1977). The uncalled witness in the present case was defendant's sister. There was evidence that she had driven defendant to Memphis in 1977. Clearly Helen Sanders would be expected to give favorable testimony on defendant's behalf and was more available to defendant than to the state. *State v. Ivory*, 609 S.W.2d 217, 221 (Mo.App.1980); *State v. Collins*, 587 S.W.2d 303, 307 (Mo.App.1979).

Nor can we conclude that Helen Sanders' testimony would have been merely cumulative to the testimony contained in the two depositions introduced at trial. The depositions of Ella Riley and Douglas Sanders indicated that defendant was in Memphis in October, November and December of 1977. Both Riley and Douglas Sanders stated they saw defendant "every day," but neither had any specific memory of November 7, 1977, and they were not questioned concerning any memory of November 8, 1977, the date of the crime in issue. Douglas Sanders stated that Helen Sanders drove defendant to Memphis in October, 1977, and that she attended a party there on November 27, 1977. There is nothing in the record regarding any statements by Helen Sanders concerning the time period in question. "Evidence is cumulative when the fact is 'fully and properly proved by other testimony' so as to take it out of the area of serious dispute." *State v. Ralls*, 583 S.W.2d 289, 292 (Mo.App.1979). Defendant's whereabouts on or about November 8, 1977, were not fully and properly proven by the deposition testimony, and we cannot presume that Helen Sanders' testimony would have been

down. I'm telling you you don't have any evidence of alibi. You just have some fabricated

cumulative to the facts established at trial. Defendant's first contention is without merit.

Defendant next contends the trial court abused its discretion in refusing to allow defense witness Ester Emas to testify that defendant failed to attend traffic court in St. Louis County on October 3, 1977, and in refusing to admit court records pertaining to a traffic ticket received by defendant. Defendant's offer of proof established that Ms. Emas was a clerk for the St. Louis County Magistrate Court. She testified that defendant failed to appear in court on October 3, 1977 to pay a traffic ticket and court costs. The trial court sustained the state's objection that this testimony was not relevant to the case. Defendant argues that the evidence supported his alibi defense.

■ Evidence is relevant if it logically tends to prove or disprove a fact in issue or to corroborate evidence which itself is relevant and bears on the principal issue. In a criminal proceeding, questions of relevancy are left to the discretion of the trial court and its rulings will be disturbed only if an abuse of discretion is shown. *State v. Wood*, 596 S.W.2d 394, 402 (Mo. banc 1980); *State v. Proctor*, 546 S.W.2d 544, 545 (Mo. App.1977). The crime charged in this case occurred on November 8, 1977. The fact that defendant did not appear in court to pay a traffic fine in St. Louis County on October 3, 1977 obviously does not establish his whereabouts on the date of the crime. The trial court acted within its discretion in excluding the testimony and court records.

■ Defendant next contends that the trial court erred in admitting state's exhibits 3 and 4, which were cards containing defendant's fingerprints. Exhibit 3 was a fingerprint card which had been kept in police department records. Exhibit 4 was a fingerprint card made in the presence of the trial judge and the trial attorneys in this cause. Both exhibits were used by the

story printed down in Memphis...."

state's fingerprint expert to identify the recovered fingerprint found in the victims' home. Certain information on exhibit 3 was covered over with tape to prevent the jury from reading potentially prejudicial information contained on the card. Defendant contends the exhibits linked him to prior crimes and offenses. He argues the taped portions of exhibit 3 would cause the jury to infer defendant had been arrested previously, especially in light of the prosecutor's remarks during trial that exhibit 3 came from police files.

Masking possible prejudicial information on the fingerprint card is similar to the procedure used when police department "mug shots" are introduced into evidence. The admission of "mug shots" with blotted out portions has been permitted. *State v. Crossman*, 464 S.W.2d 36, 41 (Mo.1971); *State v. Lorenze*, 592 S.W.2d 523, 529 (Mo. App.1979); *State v. Johnson*, 539 S.W.2d 493, 517 (Mo.App.1976) *cert. denied*, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779 (1977). In the present case, the fingerprint card was relevant to the identification of defendant and its admission did not constitute prejudicial error.

 Defendant also complains that the assistant prosecuting attorney's comments that exhibit 3 came from police files caused the jury to learn that defendant had previously been arrested. There were no objections to the prosecutor's comments. Thus, defendant has not preserved anything for review. Plain error review of this contention is not warranted. There were no references at trial that defendant had a criminal record or that he had previously been arrested. The prosecutor's statement that the fingerprint card was kept in police files would not necessarily connote to the jury that defendant had a prior arrest record. We find no prejudicial error in the prosecutor's comments. *See State v. McMillan*, 593 S.W.2d 629, 632–633 (Mo.

App.1980); *State v. Leady*, 543 S.W.2d 788, 790 (Mo.App.1976). Finally, defendant also contended in this point that the trial court erred in admitting exhibit 4, the fingerprint card made in the presence of the trial judge and both trial attorneys. Defendant did not carry this point forward in the argument portion of his brief. Points of error not carried forward in the argument portion of defendant's brief are deemed abandoned. *State v. Heitman*, 473 S.W.2d 722, 727–728 (Mo.1971); *State v. Johnson, supra*.

Defendant next contends the admission of state's exhibit 2, an enlarged photograph of a sample fingerprint which was not the defendant's fingerprint, constituted prejudicial error. Defendant argues that the exhibit was not relevant or material to any matter in issue, and created a prejudicial inference that connected defendant to the crime. The exhibit was used in conjunction with the expert testimony of Paul English, a police officer with the City of St. Louis police department's Identification Unit. English referred to the exhibit during his explanation of the fingerprint identification process.

English testified that he had never seen exhibit 2 before, and acknowledged that the fingerprint depicted in the photograph had nothing to do with this case. The assistant prosecuting attorney referred to the photograph as a "sample" or "sample illustration" during his direct examination of the police officer. Defendant's trial attorney also informed the jury that the exhibit was not connected with this case but was merely a sample.[2]

 The admission of demonstrative evidence is a matter resting primarily within the trial court's discretion. *State v. Lee*, 549 S.W.2d 934, 939 (Mo.App.1977). The enlarged photograph of a fingerprint was utilized to help clarify the identification process used by fingerprint identification

---

**2.** During trial the following exchange occurred:

"Mr. Ginsburg [Defendant's attorney]: Your Honor, I would like the record and the jury to be clear that this sample illustration is in no way connected to this case. It is merely a sample.

The Court: Can that be so stipulated?

Mr. Finney [Assistant Prosecuting Attorney]: That's stipulated, Your Honor."

.

experts. The exhibit was illustrative of Officer English's relevant testimony and would have the effect of aiding the jury in arriving at a correct verdict. It is very unlikely that the jury was confused or misled by the admission of the exhibit. The jury was clearly informed that the exhibit was not a photograph of defendant's fingerprint and that it was not connected to the burglary in any manner. Under these circumstances there was no abuse of discretion in admitting the exhibit.

Defendant next contends that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence because the evidence was insufficient to link defendant to the crime charged. The sole evidence connecting defendant to the burglary consisted of one latent fingerprint found on the gun rack located in the basement of the victims' home. Officer English compared the latent fingerprint found at the scene of the crime to defendant's fingerprints. English testified that he had no doubt that the recovered fingerprint was made by defendant's left thumb. Part of the recovered fingerprint was smudged and the smudged area could not be used in the identification process. English acknowledged that in fingerprint comparisons, if there is an unexplained dissimilarity between two prints, no identification is proved. Defendant now argues that because the expert witness was unable to examine the smudged portion of the recovered print there was insufficient evidence to support the conviction. We disagree.

English testified that the ability to identify fingerprints is based on identifying points of comparison between a known print and an unknown print. He testified that it is generally accepted among fingerprint experts that eight points of comparison between the known and the unknown fingerprint is a positive identification. The standard of the St. Louis Police Department is to count to twelve points of comparison and then stop counting. The smudged area of a fingerprint is not a point of dissimilarity and has no value for com-

parison purposes. English compared the recovered fingerprint from the victims' home to fingerprints of the defendant taken after he was arrested for burglary. English found twelve points of comparison with no unexplained differences, and he had no doubt that the recovered fingerprint was made by defendant. The existence of the smudged portion of the fingerprint did not alter English's conclusion.

In reviewing the sufficiency of the evidence our review is limited to a determination of whether substantial evidence supports the verdict. Substantial evidence means evidence from which the trier of facts reasonably could find the issue in harmony therewith. The reviewing court does not weigh the evidence. *State v. Longmeyer*, 566 S.W.2d 496, 499 (Mo.App.1978).

It is well established that proof of fingerprints found at the scene of the crime "under such circumstances that they could only have been impressed at the time that the crime was committed—corresponding to those of the accused—may be sufficient proof of identity to support a conviction." *State v. Thomas*, 452 S.W.2d 160, 163 (Mo. 1970). Thus, in *State v. Simmons*, 528 S.W.2d 8 (Mo.App.1975), the victims left their home for several hours and returned to discover their home had been broken into. One fingerprint was found on the inside window sill which was identified as being identical to the defendant's fingerprints. The victims had not given the defendant permission to enter their home. This evidence was held sufficient to support the guilty verdict. *See, State v. Schleicher*, 442 S.W.2d 19 (Mo.1969); *State v. Ivery*, 534 S.W.2d 107 (Mo.App.1976).

In the present case the victims left their home early in the morning. When Mrs. Cornish returned in the afternoon she discovered her home had been broken into. Police found a partial fingerprint on a gun rack in the basement of the home. The rack had been torn off the wall. The victims testified that they did not know defendant and had not given him permission to enter their home. Officer English unequivocally testified that the recovered fin-

gerprint belonged to defendant. As noted above, he discussed the procedures used in fingerprint comparison in this case. The jury could have accepted or rejected the officer's testimony. Once again, this court does not weigh the evidence. Under these circumstances the officer's testimony constituted sufficient substantial evidence from which the jury could reasonably infer that defendant had impressed his fingerprint on the gun rack during the commission of a burglary. The trial court did not err in denying defendant's judgment at the close of all the evidence.

Defendant's final contention is that the trial court erred in allowing him six peremptory challenges in the selection of the jury rather than eight challenges. At the time of the offense, November 8, 1977, Section 546.180 RSMo Supp. 1977 authorized eight peremptory challenges for defendant and four challenges for the state. Section 546.180 was amended by the Laws of 1979, to allow six challenges for defendant and six for the state. The newly amended provisions of Section 546.180 were effective at the time of defendant's trial. Defendant contends the trial court erred in applying the newly amended provisions because (1) the number of peremptory challenges should have been determined by the law in effect at the time of the commission of the crime, and (2) the state intentionally deprived defendant of the provisions of Section 546.180 RSMo 1977 by obtaining a continuance which caused the trial to be held after the effective date of the newly amended statute.

The number of peremptory challenges to which a defendant is entitled is purely a procedural matter, and does not constitute a substantial right. *State v. Eaton*, 316 Mo. 995, 292 S.W. 70, 74 (Mo.1927); *State v. Stearns*, 617 S.W.2d 505 (Mo.App.1981). The trial court properly applied § 546.180, as amended by the Laws of 1979, to defendant's trial even though this statutory provision was not in effect at the time of the commission of the offense.

There had been one earlier trial in this cause that ended in a mistrial on August 1, 1979, when a unanimous verdict could not be reached. The cause was then set for September 10, 1979, which was before the amended § 546.180 authorizing six peremptory challenges for the defendant went into effect. The state requested continuances of the trial until October 1, 1979 and then until October 29, 1979, which caused the trial to be held after the effective date of newly amended § 546.180.

Defendant now argues that the continuances were requested by the state to deny him his right to eight peremptory challenges allowed under former § 546.180. There is nothing in the record showing that defendant ever objected to the request or the granting of the continuances. The only objection appearing in the record occurred at trial, after the voir dire but prior to actual jury selection. In a criminal proceeding an application for continuance is addressed to the sound discretion of the trial court. The reviewing court will not interfere unless it clearly appears that such discretion has been abused. *State v. Oliver*, 572 S.W.2d 440, 445 (Mo. banc 1978). There was no showing that the trial court abused its discretion in granting the continuances in this case. There was also nothing in the record which would support defendant's allegation that the state acted with the purpose of denying defendant the greater number of peremptory challenges. Defendant has not alleged that he was denied an impartial jury and nothing appears in the record to support such an allegation. Defendant's final contention is without merit.

Judgment affirmed.

STEPHAN, P. J., and STEWART, J., concur.