**STATE of Missouri, Respondent,**

v.

**William LIGHT, Appellant.**

**William LIGHT, Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 57623, 59276 and 58982.**

Missouri Court of Appeals, Eastern District, Division Two.

June 16, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1992.

Application to Transfer Denied Sept. 22, 1992.

934

Melinda K. Pendergraph, Columbia, Beth A. Davis, Union, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Judge.

A jury convicted defendant, William Light, of murder, first degree, § 565.020 RSMo 1986 [1], and armed criminal action, § 571.015. The court sentenced him, as a prior and persistent offender, to life imprisonment without eligibility for probation or parole on the murder count and to thirty years imprisonment on the armed criminal action count; the prison terms are to be served consecutively.

Defendant appeals these convictions and sentences and also appeals the denial of his Rule 29.15 Motion. We affirm.

### Direct Appeal

Defendant raises several points on appeal: (1) the state failed to make a submissible case on the murder charge; (2) the trial court committed plain error in failing to instruct the jury on the lesser included offenses of murder, second degree and voluntary manslaughter; (3) the trial court improperly sentenced him as a prior and persistent offender under "§ 558.019"; (4) the armed criminal action statute, § 571.-015, is unconstitutionally vague; and (5) the trial court prejudiced defendant by allowing him to be handcuffed to his chair in jail clothes during trial.

### Submissibility

To charge defendant with murder, first degree, the state alleged that defendant knowingly caused the death of Mr. George Nelson by shooting him, after deliberation. Defendant contends the state failed to make a submissible case on the elements of "knowingly" and "deliberation". We disagree.

To determine whether the state made a submissible case, we accept as true all evidence and permissible inferences which support the verdict, reject all contrary evidence and inferences, and determine whether the evidence so viewed is sufficient for reasonable persons to find the defendant guilty beyond a reasonable doubt. *E.g. State v. Mallett*, 732 S.W.2d 527, 530 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987).

The record shows that one afternoon in October, 1988, about 1:30–2:00 p.m., Mr. Fred Hackney drove to Carr Square Village in St. Louis to pick up his baby daughter. When Mr. Hackney arrived at the Village parking lot, he saw defendant, whom he knew prior to trial. Shortly thereafter, Mr. Hackney returned to his car with his daughter. As he was putting his key into the car door, he heard gunshots. He turned and saw defendant, in the middle of the parking lot, fifty to one hundred feet away, shooting at a man running away from the parking lot. At the same time, he saw Mr. Nelson getting out of a car parked on the lot. While Mr. Nelson was exiting

1. All statutory references are to RSMo 1986, unless stated otherwise.

his car, Mr. Hackney said he saw defendant walk to the car and fire one shot at Mr. Nelson at close range. Mr. Hackney ducked down between his car and a car on the other side of him. He heard two additional shots. He then saw defendant walk away from Mr. Nelson's car and out of the parking lot. Mr. Hackney left the parking area with his daughter. He reported what he saw to the police the following day.

Mr. Nelson was wounded twice. One of these wounds caused his death. That evening, the police set up a surveillance of defendant's car. Later in the evening, defendant approached his car but fled upon seeing the police. Defendant then sent a friend to pick up the car and to bring it to him. The friend was arrested, and the police seized heroin and drug paraphernalia from defendant's car.

Defendant testified at trial. He not only denied shooting Mr. Nelson, he also denied being in the Carr Square Village parking lot at the time of the shooting. He said he was a drug dealer and had sold drugs to Mr. Nelson. He also said Mr. Hackney, the state's witness, was a competing drug dealer with whom he had prior disputes. He said Mr. Hackney had accused him of stealing dope and money from Mr. Hackney and had blamed him for the confiscation of Mr. Hackney's car in a dispute over drugs. He also said Mr. Hackney told him he was going "to get [him] back" by telling the police that defendant committed the murder.

### Defendant's Arguments

■ In his Point challenging the submissibility of the state's case, defendant contends the state failed to make a submissible case on the elements of "knowingly" and "deliberation". However, in the Argument portion of his brief, defendant neither develops an argument nor cites any relevant cases to support this challenge. The challenge, therefore, is deemed abandoned. Rule 30.06(d), (e); *e.g., State v. Sanders,* 619 S.W.2d 344, 349 (Mo.App.1981). We review it, however, *ex gratia.*

### Knowingly

■ A person acts knowingly "[w]ith respect to a result of his conduct when he is aware that his conduct is practically certain to cause that result." § 562.016.3(2). Here, defendant fired a gun at the victim at close range, inflicting two wounds—one in the chest, the other in the abdominal wall. The victim died from the gunshot wound to his chest. Shooting the victim in a vital part of his body at close range supports an inference that defendant was aware the shots were practically certain to cause death. *State v. Mallett, supra,* 732 S.W.2d at 533.

### Deliberation

■ "Deliberation", as a culpable state of mind, is now defined by statute as "cool reflection for any length of time no matter how brief." § 565.002(3). Most often, deliberation must be inferred from the operative facts attending the homicide. *State v. Morris,* 639 S.W.2d 589, 592 (Mo. banc 1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). Here, the eyewitness to the homicide, Mr. Hackney, saw the victim exiting his car, and, while the victim was doing so, Mr. Hackney saw defendant walk around the victim's car and fire a shot at the victim at close range. Mr. Hackney ducked down and heard two additional shots. Then, Mr. Hackney saw defendant walk away from the car and out of the parking lot.

Defendant's unhurried steps around the car, toward the victim, his firing three shots and, then, his unhurried steps away from the victim are sufficient to support an inference that defendant coolly reflected on his shooting. *See, e.g., State v. Clemmons,* 753 S.W.2d 901, 906 (Mo. banc 1988), *cert. denied,* 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988) (evidence the defendant reflected at least during the time it took to walk a few steps to reach the victim supported the finding of deliberation); *State v. Mallett, supra* at 533 (first gunshot would have incapacitated victim, which supported inference of reflection before second and third shots.)

## Lesser Included Offenses

Defendant contends the trial court committed plain error in failing *sua sponte* to instruct the jury on the lesser included offenses of murder, second degree and voluntary manslaughter. We disagree.

■ Murder, second degree, § 565.021, and voluntary manslaughter, § 565.023, are lesser degree offenses of murder, first degree. § 565.025.2(1)(a), (b). However, even if requested to do so, the trial court is not obligated to instruct the jury on the lesser degree homicide offense unless there is a basis for a verdict acquitting the defendant of the homicide charged and convicting him of the lesser degree homicide offense. § 556.046.2; *State v. Stepter*, 794 S.W.2d 649, 652 (Mo. banc 1990); *State v. White*, 790 S.W.2d 467, 471–72 (Mo.App. 1990).

Defendant contends the jury could have found that he knowingly shot the victim but did not do so deliberately, and, thus, could have found him guilty of murder, second degree. § 565.021. The record does not support this contention.

Defendant denied shooting the victim. Moreover, as noted, Mr. Hackney, the eyewitness, saw defendant walk around the victim's car as the victim was exiting it and then saw defendant fire a shot at the victim at close range. This testimony shows deliberation, *State v. Clemmons, supra,* not the lack of it. Thus, there was no evidence to support an instruction on murder, second degree. *State v. Amerson,* 518 S.W.2d 29, 33 (Mo.1975).

The record evidence also does not support a voluntary manslaughter instruction. Such an instruction is not required unless defendant "caused the [victim's] death under the influence of sudden passion arising from adequate cause; ...". § 565.023.-1(1); *State v. Gray,* 731 S.W.2d 275, 285 (Mo.App.1987). Defendant contends the jury could have found he and the victim argued about drugs and this heated argument caused him to shoot the victim. But, defendant fails to cite any operative facts in the record to support this suggested finding.

Defendant not only denied shooting the victim, he denied even being present at the scene of the shooting. And, the eyewitness, Mr. Hackney, saw no argument. Absent sufficient evidence, an instruction on voluntary manslaughter was not required. *State v. Meadows,* 785 S.W.2d 635, 641 (Mo.App.1990); *State v. White, supra.*

## Statutory Challenges

Defendant contends he was improperly sentenced "as a prior and persistent offender under Section 558.019" because that charge was not filed until "five days *after* the jury's verdict," (emphasis his). Defendant misreads the record. He was charged both as a prior and persistent offender prior to trial.

■ Defendant also contends our armed criminal action statute, § 571.015, is unconstitutionally vague. Defendant did not raise this constitutional issue until after his Rule 29.15 post-conviction motion was denied. He, therefore, did not raise this issue at the earliest time consistent with good pleading and orderly procedure. *E.g., State v. Thompson,* 627 S.W.2d 298, 303 (Mo. banc 1982); *State v. Zismer,* 696 S.W.2d 349, 351 (Mo.App.1985). Consequently, he has waived this issue. *State v. Thompson, supra* at 303.

## Trial In Handcuffs and Jail Clothes

Defendant contends the trial court prejudiced him by allowing him to be handcuffed to his chair, in jail clothes during trial. The handcuffs and jail clothes, defendant contends, denied him his rights to a "fair trial and to due process" by implying defendant was dangerous, needed to be separated from the community at large and, therefore, was guilty. These objections were not made at trial. We review them for plain error.

■ The trial court has discretion to determine whether to use restraints to maintain order and security in the courtroom. *State v. Guinan,* 665 S.W.2d 325, 330–331 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). A defendant is entitled, however, to "appear

before the jury unfettered unless for good cause." *State v. Gilmore*, 661 S.W.2d 519, 525 (Mo. banc 1983), *cert. denied*, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). The necessity and propriety of restraints depends upon the facts of each case. *State v. Methfessel*, 718 S.W.2d 534, 537 (Mo.App. 1986).

■ Both defense counsel and the experienced trial judge were aware of the possible negative effect of singling out defendant from everyone else in the courtroom. Prior to trial, without any indication from the trial judge about security measures, defense counsel requested the judge to have defendant handcuffed to a chair "[r]ather than [having] an inordinate number of sheriff (sic) deputies ... to provide security for the court." Counsel said:

> As Your Honor is aware, this charge that my client faces is first-degree murder. I understand from [the prosecutor] that this is a prior and a persistent case and the information is going to be amended. Rather than have an inordinate number of sheriff['s] deputies over here to provide security for the court, my client is agreeable and I think it's appropriate that he remain handcuffed during the proceeding of the trial. We can simply handcuff his left hand to the chair there. That will eliminate any security problems, or at least minimize the security problems, and that's something that I don't think will be unduly prejudicial to the jury. We can bring that up in voir dire and I don't think that that would be—.

The judge interrupted counsel and understandably asked defendant what his understanding and wishes were.

> [The Court]: Mr. Light, do you consent to that, sir?
> [Defendant]: Yes, I do.
> [The Court]: And you understand, sir, you are entitled to sit there and have no restraints on you at all as long as you behave yourself? You understand that, sir?
> [Defendant]: What's the purpose of me having them on then?
> [The Court]: Right now, sir?

> [Defendant]: No, during trial.
> [The Court]: For security purposes, actually.
> [Defendant]: All right, then.
> [The Court]: What do you want to do, sir? I want you to tell me.
> [Defendant]: I'll go along with them on that.
> [The Court]: Why don't you get a towel and place it on him.
> [Defendant's Counsel]: Oh, absolutely, that will be fine.
> [The Court]: Is that satisfactory with you, sir?
> [Defendant]: Yes.
> [The Court]: When you testify in this case, if you do testify—and that's up to you—you will have no handcuffs on you; you understand that, sir?
> [Defendant]: Yes.
> [The Court]: Okay. Thank you very much. I appreciate your cooperation with your attorney, sir. I want you to know that this court will provide sufficient security in the courtroom and you can, if you so desire, actually sit there with no restraints on you whatsoever. You understand that, sir?
> [Defendant]: Yes.

From this colloquy, it is clear that defendant was not compelled to wear handcuffs. To the contrary, he and his counsel requested the handcuffs. If under the circumstances defendant did have a constitutional right not to be handcuffed, he intelligently and voluntarily waived that right. *See, e.g., Estelle v. Williams*, 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

Although not specifically relied upon by defendant, we do note that the colloquy between defendant and the trial judge continued:

> [The Court]: This is your decision; is that correct, sir?
> [Defendant]: Yes. From my understanding, you're saying its the best to keep that on because there'll be less sheriffs here?
> [The Court]: This is one of the reasons [defense counsel] advances, that's cor-

rect, sir. And this is your decision. You understand that?

[Defendant]: Yes.

[The Court]: You want to keep the handcuffs on; is that correct?

[Defendant]: Yes, if it will show prejudice by having a lot of sheriffs over there.

[The Court]: Good. And I'll just have one sheriff by you, sir.

[Defendant]: All right.

Arguably, this latter exchange may be construed to mean defendant's waiver of his rights was not unequivocal and was dependent on his perceived notion of the number of sheriffs the judge would use. If so, then, the record simply shows the trial judge using his discretion, under all the circumstances, to determine the best method to secure his courtroom.

■ Defendant had a criminal history. He admitted he sold drugs. He was charged with murder, first degree and armed criminal action. His counsel requested handcuffs. Defendant agreed and was given ample opportunity to withdraw his consent. Moreover, trial counsel told the judge he would explain to the venire panel that the handcuffs were solely for security reasons and were not to be taken to indicate guilt. Trial counsel did so and also questioned the prospective jurors about the handcuffs. Under these circumstances, the trial judge committed no error, and, thus, no plain error in exercising his common sense and permitting defendant to be tried with one arm handcuffed to a chair rather than using sheriffs. *See, e.g., State v. Guinan, supra,* 665 S.W.2d at 330–331.

■ Defendant's complaint about wearing jail clothing during trial is likewise without merit. Defendant did not raise this issue until this appeal. This may be due to the fact that defendant was wearing a blue jail uniform and yellow armband during voir dire, but, apparently, the next day he was wearing a white shirt and no readily identifiable jail clothing. Be that as it may, defendant's failure to object during trial to wearing jail clothing negates the compulsion necessary to establish a constitutional violation. *Estelle v. Williams, supra.*

### *Rule 29.15 Motion*

Defendant contends his trial counsel was ineffective because counsel (1) degraded him by "name-calling", (2) requested defendant be handcuffed and appear in jail clothing at trial, (3) withdrew motions to suppress evidence, identification and statements and failed to object to the admission of the evidence and testimony which were the subject of these motions. Defendant raised these same contentions before the motion court, and, after a hearing, that court denied defendant's motion, with supporting Findings of Fact and Conclusions of Law. These Findings and Conclusions are not clearly erroneous. Rule 29.15(j).

### *"Name–Calling"*

■ At the time of trial, defendant's trial counsel had been practicing law in Missouri for 22 years, in criminal and civil trials exclusively. He also had taken 40 to 60 hours of Continuing Legal Education. This defendant was the only criminal defendant he had represented who had been convicted.

Defendant likewise was not a naive neophyte unfamiliar with the criminal process. In 1980, he pleaded guilty to robbery, first degree and was imprisoned; in 1985, he pleaded guilty to possession of a controlled substance while in a correctional institution. He was an admitted drug dealer.

With this background, trial counsel was faced with an eyewitness whose testimony would support an inference that defendant shot the victim without provocation. To counter this testimony with an alibi defense, trial counsel chose to establish defendant's credibility by admitting his bad character, his prior convictions and his drug dealing, focusing on the crime charged—murder, and attacking the eyewitness's credibility through defendant's testimony that the eyewitness had reason to damage defendant because the witness was a competing drug dealer, had blamed defendant for the confiscation of his car and had told defendant he was going "to

get [him] back" by telling the police defendant shot the victim. Thus, at the motion hearing, trial counsel said:

> We made no attempt to conceal [defendant's] prior criminal record, nor did we make any attempt to conceal the fact that he simply is not a nice person.

> .    .    .    .    .

> My thrust of the entire defense was to acquit this man of first degree murder. There wasn't any question that he was a drug dealer. There wasn't any question that he was dealing drugs on the day the shooting occurred. My idea, my goal, my strategy was to acquit this man of first degree murder.

In implementing this strategy, trial counsel admitted in voir dire that defendant was a "drug dealer" who had a "prior record for armed robbery and for possession of ... marijuana or something like that", continued to refer to him as a drug dealer throughout the trial and in closing argument characterized defendant as a "sleazebucket", a "bad man", who "isn't the type that any of us would want to have break bread with our children." Defendant contends these and other denigrating remarks show a dereliction of duty and an abandonment of defendant by his trial counsel.

To state the obvious, merely labelling a defense as "trial strategy" or "trial tactics" does not protect the trial counsel from being found ineffective. However, in defending defendant against the eyewitness's account of the shooting, we cannot say the defense chosen was professionally unacceptable.

We take defendant's trial testimony at face value. He not only said he did not shoot the victim, he also said he was not even at the scene of the shooting. Moreover, he gave an explanation for a revengeful, rather than truthful, witness which was not completely irrational. Faced with this testimony of defendant, his trial counsel chose a plausible explanatory defense.

The motion court was required to determine whether counsel's strategy was reasonable. *Childress v. State*, 778 S.W.2d 3, 6 (Mo.App.1989). In doing so, it was required "to eliminate the distortion wrought by hindsight and to evaluate the challenged conduct from counsel's perspective at the time of the conduct." *Id.* The motion court and we may have chosen to defend differently. Neither that court nor we, however, find defense counsel's choice of defense so unreasonable that it constitutes ineffective assistance of counsel.

Nor can we find the motion court was clearly erroneous in finding trial counsel's characterizations of defendant manifested ineffectiveness. In referring to defendant in voir dire as a drug dealer who had prior unrelated convictions, trial counsel emphasized that defendant

> ... is not being tried for being a drug dealer. You all understand that? He's being tried for murder.

> .    .    .    .    .

> He's being tried for the murder of a particular person on a particular day, using a particular instrumentality of death. That's what he's being tried for.

> .    .    .    .    .

> See, what we're getting at here is the fundamental rule of a jury in our society. If we convict people just because they're bad people or just because they are drug dealers without reference to what the evidence is or what the law is, what separates us from the rest of society, from the rest of the people, if anything?

And, in closing argument, trial counsel coupled his characterizations of defendant as a "sleazebucket" and a "bad man" with a pointed reminder to the jury that:

> It's really hard to put away our passions. It's really hard to look at this man and not say this guy is a sleazebucket. You know, he deserves to be in the penitentiary. Okay, you're right. He does. There isn't any doubt about that. But the question, you know, is does he deserve to be in the penitentiary for the crime of murdering George Nelson? That's the real issue. The real issue is: did the prosecution prove beyond a reasonable doubt that he killed this man.

> .    .    .    .    .

But we're going to talk about the difference between a mob and a jury. Mobs don't care. Mobs go out and lynch somebody, they can go out and hang somebody, and they can walk away because they were only a mob. You can't do that.... You all swore before God and each other, and more importantly to yourself .... ... that you wouldn't be a mob, that you would decide this case based on evidence, that you were able to put aside the extraneous stuff....

Trial counsel's characterizations of defendant appear to be bold and blatant tactical trial errors when read in isolation, but they do not appear so when read in context. *See, e.g. United States v. Simone,* 931 F.2d 1186, 1194–1196 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 584, 116 L.Ed.2d 609 (1991).

### Handcuffs and Jail Clothes

■ Defendant also contends his trial counsel was ineffective because counsel asked the trial judge to have defendant handcuffed to a chair during trial and counsel told the jury that defendant was handcuffed for security purposes. We have addressed this issue when raised by defendant in his direct appeal as a violation of his constitutional rights to a fair trial and due process. Our disposition of the issue here is the same.

We do note, however, that at the motion hearing, trial counsel acknowledged that his reason expressed at trial for requesting defendant to be handcuffed to the chair was to avoid "an inordinate number of sheriffs in the courtroom." However, he implied he may have had unstated reasons for making that request. Thus, at the motion hearing, he said,

... [T]here were statements which [defendant] made to me during the course of my representation that indicated that it would be in his best interest, and the best interest of the court, and in the best interest of the sheriff's deputies that he be handcuffed at the time of trial,....

These "indications" he said, "would be for safety and security reasons...."

[The request] was based upon statements that [defendant] made to me during the course of the interviews with him. It was based upon my own investigation of [defendant] and his criminal history. It was based upon statements which were relayed to me by people that [defendant] had talked to regarding the trial,....

This veiled and cryptic testimony does not explain counsel's unstated specific concern. But, we have read the trial record and we do not discern anything less than aggressive and vigorous conduct by trial counsel of his chosen defense. Moreover, as we noted in detail in resolving this issue in defendant's direct appeal, defendant was given ample opportunity to reject the use of handcuffs and his decision was not that of an inexperienced and naive defendant enmeshed in a process he did not understand.

■ Although defendant raised the issue of jail clothing in this Point, he did not develop an argument or cite any relevant case to support this issue in the Argument portion of his brief. This issue, therefore, is deemed abandoned. *State v. Sanders, supra,* 619 S.W.2d at 349. Moreover, the record before us does not disclose defendant raised this issue before the motion court, and, therefore, we would lack jurisdiction to consider it. *Grubbs v. State,* 760 S.W.2d 115, 120 (Mo. banc 1988), *cert. denied,* 490 U.S. 1085, 109 S.Ct. 2111, 104 L.Ed.2d 672 (1989).

### Withdrawal of Motions to Suppress

Trial counsel withdrew separate motions to suppress evidence, identification and statements filed by defendant's prior counsel. Defendant contends these motions should not have been withdrawn.

Defendant raises this challenge in his Point, but, again, in the Argument portion of his brief, he develops no argument nor cites any relevant cases to support the challenge. Therefore, he has abandoned this challenge. *State v. Sanders, supra.* We consider this challenge, however, *ex gratia.*

*Motion to Suppress Evidence*

This motion was to suppress all articles the police seized from defendant's car, in particular drugs and drug paraphernalia. Trial counsel's trial strategy included an admission that defendant was a drug dealer; but, a drug dealer with whom Mr. Hackney competed. Thus, counsel withdrew this motion and did not object to the introduction of this evidence, he said, because the evidence was consistent with the defense.

We have found this trial strategy not unreasonable given the facts of this case. Thus, whether another attorney would have attempted to exclude this evidence is not relevant. Once the trial strategy was chosen, defendant becomes an admitted drug dealer, and drugs and drug paraphernalia in a drug dealer's car would be an expected occurrence rather than prejudicially adverse evidence.

*Motion to Suppress Identification*

This motion was to suppress Mr. Hackney's identification of defendant. Trial counsel withdrew this motion, he said, because he knew Mr. Hackney would testify he knew defendant prior to trial. Moreover, defendant insisted that he testify in his own behalf, and he testified he had known Mr. Hackney for several years, they were competitors in the drug business and had had many disputes. Thus, even if there were grounds to suppress Mr. Hackney's identification of defendant, trial counsel's withdrawal of the motion could not have prejudiced defendant.

*Motion to Suppress Statements*

This motion was to suppress the statement allegedly made by defendant to a detective that defendant had been "laying low" since the shooting. According to the detective, defendant made this statement voluntarily after he was advised of his Miranda rights, and defendant does not cite us to any contradiction of the detective's testimony. Defendant's statement was,

therefore, admissible. *State v. Green*, 798 S.W.2d 498, 504 (Mo.App.1990).

Judgments affirmed.

GRIMM, P.J., and CRANDALL, J., concur.