**STATE of Missouri, Plaintiff–Respondent,**

v.

**Robert L. MITCHELL, Defendant–Appellant.**

No. 23422.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 28, 2001.

Motion for Rehearing and Transfer Denied
March 13, 2001.

Application to Transfer Denied
April 24, 2001.

---

Amy M. Bartholow, Asst. Public Defender, Columbia, Attorney for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.

SHRUM, J.

Robert Mitchell ("Defendant") appeals his convictions, following a jury trial, of forcible sodomy (§ 566.060), forcible rape (§ 566.030), second degree assault (§ 565.060), and felonious restraint (§ 565.120).[1] This court affirms.

P.W. ("Victim") and Defendant commenced living together in late October 1998. Sometime after midnight on December 31, 1998, Victim left her job at the post office and returned to the house she and Defendant shared. Upon arrival at the house, she found some of her clothing on the front porch and the front door locked in a manner denying her access. When Defendant opened the door, he was naked and began yelling at Victim to get out. Thereafter, the pair went inside the house where Defendant "backhanded" Victim several times across the face and accused her of engaging in sexual intercourse with another man.

The two continued arguing and went into the bedroom where Defendant grabbed a knife from the bedside table, opened it, and told Victim to get undressed. Victim attempted to leave the room, but tripped and fell. Thereon, Defendant pulled her up by the lip and onto the bed where she undressed. After relating the above-mentioned events at trial, Victim testified to the details of the offenses charged and found by the jury to have been committed during the ensuing twenty-four hour period. Because the suf-

---

1. All statutory references are to RSMo 1994, unless otherwise indicated.

ficiency of the evidence is not an issue on appeal, we need not repeat those details. Suffice it to say, Victim was restrained at the house and assaulted during that period. Sometime after midnight, on January 1, 1999, Victim heard Defendant and his friends leave the house. At that point, she dressed, ran to the post office where her father worked, and told him of some of the assaults committed upon her. Victim was then taken to the police station and ultimately to a hospital where she talked with a nurse, a doctor, and two police officers.

Defendant was arrested the morning of January 1, 1999, and taken to the "breathalyzer room" of the Springfield city jail where two officers did a "reverse rape kit" on Defendant.[2] From the time Defendant was first arrested until the evidence was collected, Defendant was never advised of his *Miranda* rights.[3] During the performance of the rape kit, Defendant made several inculpatory statements, including the following: (1) "I wasn't wearing those clothes then, I was naked," (2) "You can't rape the willing," (3) "I know you can use this against me, but it's the truth," (4) "I couldn't have raped her because [Victim] was [his] wife," and (5) "This took place two days ago."

*Point I*

Defendant's first point relied on claims the trial court erred in overruling his motion to suppress his inculpatory statements and admitting them into evidence at trial over his objection because that ruling violated his right against self-incrimination under both the U.S. and Missouri Constitutions.

■ At the outset, we note Defendant asserts this alleged error in his point, but fails to adequately address the point in the argument section of his brief. Defendant begins his argument by setting forth the general principles which guide any discussion of an accused's right against self-incrimination without any attempt to develop it in the factual context of this case. As structured, his argument is nothing more than conclusory allegations asserting that what occurred during the rape kit procedure violated his constitutional rights. He cites absolutely no on-point authority which supports his position. By failing to support his argument with relevant authority or argument beyond mere conclusions, we are allowed to consider this point abandoned. *State v. Perry*, 954 S.W.2d 554, 570[29] (Mo.App.1997).

■ However, even upon an *ex gratia* analysis of the alleged error, we find Defendant's contentions to be meritless. Trial courts have broad discretion to admit or exclude evidence and reversal can be had only upon showing a clear abuse of that discretion. *State v. Simmons*, 944 S.W.2d 165, 178[21] (Mo.banc 1997). Appellate review of the admission of evidence following a ruling on a motion to suppress is limited to determining whether the evidence is sufficient to support the trial court's ruling. *State v. Thompson*, 826 S.W.2d 17, 19[1] (Mo.App.1992). An appellate court considers the facts and reasonable inferences of those facts in the light most favorable to the trial court's ruling. *State v. Rodriguez*, 877 S.W.2d 106, 110[11] (Mo. banc 1994).

---

**2.** At trial, the police officers used the term "reverse rape kit" to mean a procedure whereby evidence is collected from the body of the accused including hair from the head, pubic hair, fingernail scrapings, and saliva.

**3.** In *Miranda v. Arizona*, the U.S. Supreme Court set out what have come to be known as "the *Miranda* warnings" as a "procedural safeguard" designed to protect an individual's privilege against self-incrimination. 384 U.S. 436, 478–79, 86 S.Ct. 1602, 1630[66, 67], 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966).

The evidence reveals Defendant was taken into custody and not advised of his *Miranda* rights. He was taken into a room with two police officers present and advised that a reverse rape kit procedure was to be conducted upon him. At no time were any questions asked of him. To the contrary, Defendant questioned the police officers, and the police officers merely responded to the questions. It was only after these *responses* that Defendant made the statements which tended to incriminate him. The trial judge found the statements were made voluntarily (even though while in custody), and that the officers did not know (nor should they have known) their actions or words would elicit incriminating statements. We agree.

■■ The *Miranda* safeguards apply whenever a person in custody is subjected to either express questioning or its functional equivalent, i.e., interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 300, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). A functional equivalent of questioning is any statement or conduct which the police should know is "reasonably likely to elicit an [inculpatory or exculpatory] response from the suspect." *Id.*

There can be no doubt Defendant was in custody, but not subject to express questioning. Defendant merely asserts that by performing the rape kit procedure upon him, this "clearly subjected [Defendant] to actions on the part of the police that were reasonably likely to elicit an incriminating response." Both officers testified their purpose was solely to perform the reverse rape kit.[4] Both testified no questions were asked of Defendant; to the contrary, the only direct statement made was that evidence was to be collected either by the officers or by Defendant. The only other statements made by the police were simple answers to Defendant's questions. Furthermore, Defendant was well acquainted with the criminal justice environment.[5] In fact, Defendant asked for "papers" proving the officers were allowed to perform the rape kit. We cannot say that solely by attempting to collect evidence, the police should have known this was likely to lead to Defendant incriminating himself. "[T]he police surely cannot be held accountable for the unforeseeable results of their words or actions...." *Id.* at 446 U.S. at 302, 100 S.Ct. 1682. We find no violation of Defendant's right against self-incrimination.

■■ However, this does not end our discussion regarding Defendant's first point. Defendant also asserts the statements should have been suppressed as "the fruit of an illegal warrantless search of his person." Defendant's argument regarding this claim is skeletal at best. Interwoven in this "argument" is an apparent claim that Defendant was denied his right to counsel. Defendant has provided this court with no citations to support this claim, nor has he developed it in any fashion other than conclusory. An argument is not properly before an appellate court if it merely makes bald assertions of general principles of law and never develops how such principles mandate reversal in the factual context of the particular case. *State v. Kitson*, 817 S.W.2d 594, 597[5] (Mo.App.1991). It is not within our province to speculate about, then decide, arguments which are not asserted or are merely asserted but not developed. *State v. Hendricks*, 944 S.W.2d 208, 210[2] (Mo.

**4.** *Innis* indicates the inquiry focuses primarily on the perceptions of the accused, but the intent of the police is not wholly irrelevant. 446 U.S. at 300–02, 100 S.Ct. at 1689.

**5.** Defendant was convicted as a prior and persistent offender receiving a total of seventy years for his present convictions.

banc 1997). Since Defendant has wholly failed to develop his illegal search claim raised in his point relied on, that claim is deemed abandoned. *State v. Taylor*, 944 S.W.2d 925, 939[46] (Mo.banc 1997); *State v. Light*, 835 S.W.2d 933, 936[2] (Mo.App. 1992).

Point denied.

*Point II*

■ In his second point on appeal, Defendant asserts the trial court erred by overruling his:

> "request to dismiss his attorney and obtain the services of a different public defender's office, in violation of [Defendant's] right to due process of law and conflict-free counsel ... in that [Defendant's] attorney and her entire office were laboring under a conflict of interest ... resulting in the inability of [Defendant's] attorney to give her undivided loyalties to [Defendant]."

This is nothing more than a claim that Defendant was denied effective assistance of counsel as evidenced by the following discussion. In arguing this request for a new attorney to the court, Defendant made the following comments: "[S]he's not doing her job ... not what she should do ... for her client.... She's not filing motions ... there's witnesses still that haven't been— haven't been talked to on—my case.... There's still a lot of things she hasn't done. She don't want to do it, I guess." In his motion for new trial, Defendant attempted to preserve this issue with the following: "Defendant filed ineffective assistance of counsel before jury trial on attorney for stating false facts in motions.... Also

counsel refused to inform defendant of court dates." That motion also recited: "The court errored [sic] in denying defendant's motion [of] ineffective assistance of counsel, and letting counsel represent defendant at trial." Defendant did not present any oral argument on the new trial motion to the court, but chose to stand on the motion as written. Furthermore, in the argument section of his brief, Defendant solely relies on the Sixth Amendment to the U.S. Constitution.[6] Defendant's argument to support this alleged error cites only one case which deals with *ineffective assistance* of counsel. To attempt to couch this claim in terms other than ineffective assistance of counsel is akin to "untying the Gordian knot."

■ Claims of ineffective assistance of trial counsel cannot be raised on direct appeal, but rather must be raised by way of a post-conviction relief motion under Rule 29.15. *State v. Wheat*, 775 S.W.2d 155, 157–58[1] (Mo.banc 1989); *State v. Finster*, 985 S.W.2d 881, 890[14] (Mo.App. 1999). Point denied.[7]

*Point III*

■ In his third point on appeal, Defendant contends the trial court abused its discretion by overruling his motion for a mistrial based on the prosecutor's comments during voir dire which allegedly referred to Defendant's right not to testify. The comment is reproduced as follows:

> "Many of you said that you were parents of more than one child, some of you are managing supervisors at work which would put you in situations where you

6. The Sixth Amendment guarantees not only the right to counsel, but to *effective assistance* of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984).

7. Even had the alleged error been cognizable on direct appeal, Defendant provided the court with only one case citation by which he mischaracterized the holding of the case. This is wholly insufficient to comply with the mandatory briefing rules of appellate practice.

might sometimes be listening to opposite stories from two different people and you're in situations where you need to figure out who's telling the truth."

Defendant timely objected and discussion was had off the record wherein the trial judge sustained the objection and warned the prosecutor not to return to that type of questioning, but overruled Defendant's motion for a mistrial. Defendant asserts this to be an abuse of discretion because the "comment was a prejudicial direct reference to [Defendant]'s right not to testify and, in fact, [Defendant] did not testify or present any evidence whatsoever." However, in the argument section of his brief, Defendant refers to this comment as an "indirect reference." As such, we will proceed to decide this point as Defendant has argued it.[8]

■■■■ "Mistrial is a drastic remedy reserved for the most extraordinary circumstances." *State v. Clemons*, 946 S.W.2d 206, 217[14] (Mo.banc 1997). The decision to grant a mistrial is left to the sound discretion of the trial court because it is in the best position to observe the impact of the problematic incident, and review of the decision is for an abuse of discretion. *Id.* at 217[15].

■■■■ "It is firmly imbedded in the law that a prosecutor may not comment on a defendant's failure to testify." *State v. Sidebottom*, 753 S.W.2d 915, 920 (Mo.banc 1988). "An indirect reference to a defendant's failure to testify is improper only where the prosecutor proceeds from a calculated intent to magnify the defendant's decision not to testify so as to call it to the jury's attention to that silence." *Clemons*, 946 S.W.2d at 228[81].

■■■■ In reviewing a claim of an improper comment on a Defendant's right not to testify, an appellate court must consider the comment in the context in which it appears. *State v. Neff*, 978 S.W.2d 341, 344[15] (Mo.banc 1998). By considering the context, it is clear the comment was not improper. The comment was made during voir dire. The venirepersons were initially questioned about general information, i.e., backgrounds, knowledge of the case or people involved, and if any of them or family members had been victims of crimes or convicted of any crimes. Following that discussion were questions in relation to personal opinions on rape. The venirepersons were then questioned on their opinions regarding traumatic events and memory thereof, i.e., would a person's memory be better shortly after the event or later. Next was a discussion on learning disabilities and how that would affect one's ability to communicate. The prosecutor then asked if any prospective juror had a problem with finding proof beyond a reasonable doubt with only one witness to the crime. After this discussion, the prosecutor made the alleged improper comment.

Taken in context, we cannot conclude this was a "calculated intent" to "magnify" the decision not to testify to the prospective jury's attention. The venirepersons had no idea of the facts underlying the case. They did not know Defendant had made comments to the police which were to be used at trial. They did not know Defendant was not going to testify. Furthermore, the prosecutor informed the trial judge the question was designed to elicit responses as to how each would make credibility determinations in light of the

---

8. The argument section cites numerous cases for general principles of law, but the only case cited by Defendant as relevant authority for his position is one involving an indirect comment. As such, we presume Defendant merely made a typographical error in his point relied on.

fact the incriminating statements by Defendant were going to be admitted at trial. Likewise, the jury was to make a determination of Victim's credibility at trial because she told at least two witnesses that she and Defendant did not have "vaginal sex." However at trial, she testified she did not make that statement. *If* the jury did indeed even remember the prosecutor making this comment, there is no evidence this was thought of by the jury as a reference to Defendant's failure to testify. In fact, it is just as reasonable to assume the jury thought the comment to be directed at Victim.

Furthermore, the statements were admitted into evidence and the jury did have to make a credibility determination regarding whether the statements were in fact true, i.e., an issue regarding consent. The prosecutor was not forbidden from commenting on Defendant's credibility. *See State v. Futo*, 990 S.W.2d 7, 15 (Mo. App.1999); *State v. Burrell*, 944 S.W.2d 948, 952[11] (Mo.App.1997). Likewise, Defendant cannot show he was prejudiced by these comments. Although alleged in his point relied on, Defendant's argument of prejudice is set forth as follows:

> "[T]he prosecutor's comment was highly prejudicial because the jury was left to infer that since [Defendant] did not testify or present evidence, that [Victim] must be telling the truth. Unfortunately, this gave [Victim's] testimony more weight that [sic] it may have deserved, especially in light of the discrepancies between her testimony and that of the nurse, doctor and police officer."

This is nothing more than a conclusory allegation wholly unsupported by citations to transcript, legal file, or relevant authority. We conclude this to be so because Defendant cannot possibly show a prejudicial effect regarding the statement. This follows because the prosecutor told the jury what is a truism, i.e., the jury had to determine who was telling the truth.

On these facts, we cannot conclude the drastic remedy of a mistrial is warranted. Point denied.

The judgment of the trial court is affirmed.

PARRISH, P.J., and MONTGOMERY, J., concur.