STATE of Missouri, Respondent,

v.

Edward William DAVISON, Appellant.

No. 18923.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 27, 1994.

Dee Wampler, Wampler, Wampler & Catt, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Cheryl A. Caponegro, Asst. Atty. Gen., Jefferson City, for respondent.

MONTGOMERY, Judge.

Defendant was found guilty by a jury on two counts of first degree sexual abuse in violation of § 566.100.1(2), RSMo Supp.1993. He was sentenced to consecutive terms of imprisonment totaling six years and fined $1,500 on each·count. He appeals from that judgment. We affirm.

The sufficiency of the evidence is not challenged. The evidence, viewed in the light most favorable to the verdict, discloses that Defendant was married to the mother of S.S., a girl nine years old at the time of trial. Her friend, B.B., was the same age. Both young girls testified that Defendant, at various times, touched them on their "privates" with his finger. A videotaped statement from each girl was made by a Greene County deputy juvenile officer and shown to the jury.

A Springfield police detective testified he interviewed Defendant on at least two occasions. The first time Defendant denied any sexual involvement with the girls. The second time Defendant confessed that he had touched both girls on their vaginas but only through their clothing. Defendant admitted that "it turned him on."

Defendant presented no evidence except for the testimony of a medical doctor who said he found no physical evidence of sexual abuse regarding either girl. However, the doctor added that the absence of physical findings did not mean that no sexual abuse had occurred.

Well in advance of trial, Defendant sought to examine the records pertaining to B.B. and S.S. compiled by the Missouri Division of Family Services (DFS) and the Greene County Juvenile Office. His specific discovery motion regarding these records alleged that "hotline calls have been received concerning [B.B.] concerning a 'step-parent situation,' " and that the requested records may contain other information bearing on the credibility of the witnesses.

Prior to the filing of this specific discovery request, the State had provided Defendant with two written summaries of the DFS records concerning B.B. and S.S. According to Defendant, one of the summaries indicated that B.B. might have been molested by another step-parent and that she initially denied that Defendant "had ever done anything to her."

On May 19, 1993, one week prior to trial, a hearing was held on Defendant's discovery request. At this hearing, Defendant's counsel indicated that information contained in the summaries caused him to seek all reports upon which the summaries were based. Defendant's counsel concluded his argument by requesting, "In the alternative, if the Court is considering not sustaining my motion, then I would ask the Court to receive the documents, to order them produced to the Court in camera to look at to make a determination as to whether both counsel should have a right to look at them." The trial court denied Defendant's request to examine the records but made no ruling on his alternative request.

Undaunted, Defendant, by a subpoena duces tecum, caused both sets of records to be produced in court on the first morning of trial. The DFS records, consisting of almost 400 pages, were marked as Court's Exhibit A, and the juvenile records were marked as Court's Exhibit B. Both exhibits were made part of the record. The trial court denied Defendant's oral request to inspect the records but indicated the court would examine them in camera.

The next morning the court announced that both exhibits had been examined and said:

> There's nothing in the—neither record that pertains to this case, or that would be admissible. And I've disclosed to Mr. Wampler [defense counsel] basically what is in the files, at least my opinion of what is in the files, ... The files on [B.B.'s mother] pertain to another daughter that I took

custody of several years ago in juvenile. The only report on [S.S.] is one report where the babysitter didn't show up, and so they opened a protective service case on [S.S.'s mother], and required her to get a permanent babysitter and make some permanent recommendations. That's absolutely the only thing there, and the juvenile files, everything in the juvenile files have been produced to my knowledge.

The records were sealed and placed in the court file.

Defendant's first point alleges that the trial court erroneously denied his requests to examine the DFS and juvenile records because the State's interest in the confidentiality of the records was outweighed by Defendant's due process rights to confront his accusers. He further alleges he was prejudiced because disclosure of the records could have affected the outcome of the trial.

■■■ Because the credibility of S.S. and B.B. was important in the jury's determination, Defendant asserts that the court should have allowed him access to the records in order to effectively cross-examine each girl. With reliance on *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Defendant reminds us that the State's suppression of evidence favorable to and requested by an accused violates the due process clause of the Fourteenth Amendment where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. The *Brady* rule is sound but it does not speak to disclosure of records made confidential by state statute.

Section 210.150 [1] generally provides that DFS records are confidential. However, this statute allows the DFS to provide information to a "grand jury, juvenile officer, prosecuting attorney, ... juvenile court or other court conducting abuse or neglect or child protective proceedings." § 210.150.1(4).

Confidentiality of juvenile records is mandated by § 211.321.1 which provides that such records "shall not be open to inspection or their contents disclosed, except by order of the court to persons having a legitimate interest therein."

Citing *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), Defendant argues that any state interest in the confidentiality of the juvenile records is outweighed by his right to confront and examine his accuser. He claims this rationale should equally apply to DFS records.

In *Davis*, a state witness was on probation from a juvenile court adjudication. Defendant believed he was entitled to cross-examine the witness concerning his juvenile record to show the witness testified to avoid being a suspect and to maintain his probationary status. The United States Supreme Court agreed and held that the defendant's right to cross-examine the witness for bias and influence outweighed the state's interest in protecting the anonymity of juvenile offenders. *Id.* at 320, 94 S.Ct. at 1112.

Defendant concedes that Missouri courts have applied the *Davis* rule only in similar factual situations. *See State v. Baker*, 859 S.W.2d 805 (Mo.App.1993); *State v. Russell*, 625 S.W.2d 138 (Mo. banc 1981). However, Defendant makes clear that he sought the privileged records not for prior juvenile court adjudications but solely for information that might reveal prior inconsistent statements or other matters bearing on credibility. This issue was before the United States Supreme Court in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

Aware that full disclosure of confidential records would undermine the state's compelling interest in protecting its child abuse information, the *Ritchie* court held that defendant's "interest (as well as that of the Commonwealth) in ensuring a fair trial can be protected fully by requiring that the CYS files be submitted only to the trial court for *in camera* review. Although this rule denies Ritchie the benefits of an 'advocate's eye,' we note that the trial court's discretion is not unbounded. If a defendant is aware of specific information contained in the file ..., he is free to request it directly from the court, and argue in favor of its materiality." *Id.* at 60, 107 S.Ct. at 1002. In remanding for an in camera review, the court said: "We agree that Ritchie is entitled to know whether the

---

**1.** Statutory references are to RSMo Supp.1993,     unless otherwise indicated.

CYS file contains information that may have changed the outcome of his trial had it been disclosed." *Id.* at 61, 107 S.Ct. at 1003. The Pennsylvania statute at issue in *Ritchie* is similar to § 210.150 in that both statutes provide for certain exceptions to the confidentiality of the state agency records. One exception, common to both statutes, is that the records are available to a court conducting child abuse proceedings.

*Ritchie* controls the issue Defendant raises in this case for several reasons. First, Defendant alternatively requested an in camera review of the records and that is what he received. The trial court determined that nothing in either record pertained to Defendant's case. That determination was made in light of the trial court's knowledge that Defendant was aware of B.B.'s prior inconsistent statements and other hotline calls concerning her. After the in camera review, Defendant knew that the trial court found nothing more in the records which could change the outcome of his trial. Consequently, Defendant was accorded all the due process discovery rights that *Ritchie* mandates.

Secondly, this Court has carefully reviewed the voluminous records (Court's Exhibits A and B) to determine if the trial court abused its discretion in finding that nothing in the records pertained to Defendant's case. Our review upholds the determination made by the trial court. Even if Defendant's counsel had viewed the records, he would have found no information that may have changed the outcome of the trial. Therefore, according to *Ritchie*, Defendant had a fair trial after the trial court's in camera review properly revealed that nothing in the records pertained to Defendant's case.

Finally, Defendant attempts to distinguish the facts of *Ritchie* from his case by saying *Ritchie* was on a fishing expedition for impeaching information while he had the DFS summaries "that contained specific facts

which indicated the existence of other material evidence." If the summaries provided such an indication to Defendant, the actual records show otherwise. Defendant tried his case armed with the only impeachment-type evidence contained in the records.[2] In *State v. Belcher,* 856 S.W.2d 113 (Mo.App.1993), defendant was charged with child abuse. He requested a juvenile court transcript containing certain testimony of J.I. (the victim). Defendant alleged J.I. had testified in juvenile court that he could not remember any details of the event. Defendant's request was denied, but J.I.'s cross-examination at trial brought forth the desired information. The Eastern District of this Court said, "Since defendant was able to obtain this information directly from J.I., J.I.'s previous statements [in the juvenile proceeding] are not material." *Id.* at 117. As in *Belcher,* Defendant here knew about B.B.'s prior inconsistent statements and hotline calls concerning her. Accordingly, the records were not material. Point I has no merit.

In Point II Defendant claims the State waived the confidentiality of the DFS and juvenile records by providing him with written summaries of the records. His final point alleges the trial court erroneously refused to allow him to inspect the records produced pursuant to his subpoena duces tecum. In both points, Defendant claims he was prejudiced because disclosure of the records could have affected the outcome of his trial. Because we have demonstrated that Defendant suffered no prejudice from the nondisclosure of the records, we need not address Points II and III.

The judgment is affirmed.

SHRUM, C.J., and FLANIGAN, J., concur.

---

**2.** The transcript of Defendant's cross-examination of B.B. covers nine pages, and her recross-examination covers four pages. At no time did Defendant's counsel attempt to question B.B. about her alleged denial that Defendant "had ever done anything to her" or that she was molested by another step-parent. While the lat-

ter subject involved impeachment on collateral matters, *State v. Garner,* 799 S.W.2d 950, 957 (Mo.App.1990), the former subject did not. The failure to question B.B. about her prior inconsistent statement makes us suspicious that Defendant's counsel believed that line of inquiry would not change the outcome of the trial.