STATE of Missouri, Respondent,

v.

Martin C. LINK, Appellant.

Martin C. LINK, Appellant,

v.

STATE of Missouri, Respondent.

Nos. 19661, 21368.

Missouri Court of Appeals,
Southern District,
Division One.

March 30, 1998.

M. Elise Branyan, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for respondent.

GARRISON, Presiding Judge.

Martin C. Link (Appellant) was convicted by a jury of aggravated forcible rape, § 566.030, RSMo Supp.1990, first degree burglary, § 569.160,[1] two counts of armed criminal action, § 571.015, and first degree robbery, § 569.020.1(2). The trial court sentenced him, as a dangerous offender, to life imprisonment on each of the rape and robbery convictions, and thirty years on the burglary conviction. It also sentenced him to thirty years on each of the two armed criminal action convictions. It ordered that the sentences be served consecutively. Appellant appeals those convictions in Case No. 19661.

Appellant also filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15 which was later amended by appointed counsel. Those motions were denied after an evidentiary hearing. Appellant appeals that denial in Case No. 21368. These appeals were duly consolidated for purposes of appeal but will be discussed separately in this opinion.

■ The sufficiency of the evidence to support the conviction is not in dispute. We view the evidence and all reasonable inferences therefrom in the light most favorable to the verdicts. *State v. Crews,* 923 S.W.2d 477, 478 (Mo.App. S.D.1996). The facts, viewed in that light, indicate that on January 25, 1991, D.H. and her two-month-old child were alone at her parents' home when a man, whom she later identified as Appellant,

---

1. All statutory references are to RSMo 1986, and all rule references are to Missouri Rules of Criminal Procedure (1996), unless otherwise indicated.

knocked on the door and asked for directions to a person's home. When she told Appellant she did not know, he asked if anyone else was there who might know. When D.H. answered in the negative, Appellant produced a knife and forced his way into the house. Appellant told D.H. to remove her clothes and to give him her money. After she did both, he took her to a bedroom and had sexual intercourse with her while holding the knife in his hand. He then placed his penis in her mouth, and later placed it in her vagina a second time. Appellant, who was still holding the knife, then held a pillow over D.H.'s face, until he heard something outside the house which caused him to let her up. He then cut the phone lines and left the house. D.H. dressed and went to her aunt's house to report what had happened. She was then taken to the police department and later to a doctor's office, where she was examined.

Appellant was arrested five days later after trying to elude an officer in St. Louis. D.H. identified Appellant in a line-up and at trial. At trial, she identified a photo of the car he was driving when arrested as the same car he drove from her parents' home. She also testified that a knife found in the car was the same knife he held when he assaulted her.

### CASE NO. 19661

In his first point in his direct appeal, Appellant contends that the trial court erred in denying his challenge to the state's use of its peremptory jury strikes to remove venirepersons because "the prosecutors exercised all of their peremptory challenges to exclude male venirepersons and their explanations that four of the male jurors which were struck did not sufficiently complete the juror questionnaire was not gender neutral."

Appellant correctly points out that in *Batson v. Kentucky*, 476 U.S. 79, 86–87, 106 S.Ct. 1712, 1717–1718, 90 L.Ed.2d 69, 80–81 (1986), the United States Supreme Court held that racially motivated peremptory strikes to remove venirepersons violate the equal protection rights of both the defendant and the stricken venirepersons. That same principle has now been extended to protect against discriminatory strikes based solely on gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 129, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89, 97 (1994). "[T]he substance and procedures established by the *Batson* line of cases are equally applicable to challenges made to peremptory strikes based on gender bias." *State v. Hayden*, 878 S.W.2d 883, 885 (Mo.App. E.D.1994).

■ The Supreme Court of Missouri has adopted a three-part test in analyzing race, and now gender-based claims of discrimination in the jury selection process. *State v. Parker*, 836 S.W.2d 930, 939 (Mo.banc 1992), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992). First, the defendant must raise a challenge with regard to one or more specific venirepersons struck by the state and identify the racial or gender group to which that person belongs. *Id.* The trial court then requires the state to come forward with "reasonably specific and clear race-neutral explanations for the strike." *Id.* Assuming that the prosecutor articulates an acceptable reason for the strike, "the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated." *Id.*

■ In the instant case, Appellant, citing *Batson*, requested a mistrial after all of the State's peremptory strikes were directed at male jurors. A mistrial is not the appropriate remedy. *State v. Hudson*, 815 S.W.2d 430, 432 (Mo.App. E.D.1991). The proper objection is directed to the striking of a particular venireperson or persons prior to the venire's dismissal. *Parker*, 836 S.W.2d at 936. Nevertheless, the Missouri Supreme Court has said that "[w]here the defense attorney clearly intends to assert a *Batson* challenge and the court fully understands that the objection is to the jury's being sworn, the form of the motion is not fatal to appellate review." *State v. Starks*, 834 S.W.2d 197, 198 n. 1 (Mo.banc 1992). Here,

Appellant's attorney made a *Batson* challenge and the trial court clearly understood that the challenge was to the jury being sworn. Therefore, the nature of the challenge is not fatal to appellate review here.

■ In responding to the *Batson*-type challenge to the State's exercise of its peremptory strikes, the prosecutor explained the peremptory strikes as follows: Venireperson No. 5 was stricken because he had both a hearing problem and back trouble; Venirepersons No. 8 and No. 9 were stricken not only because the prosecutors did not feel they had enough information on them from the jury questionnaires, but also because they had not actively participated in the voir dire process in that they hesitated in raising their hands in response to questions; Venireperson No. 21 did not fully complete the juror questionnaire, and seemed to be timid and did not project himself well when answering questions; Venireperson No. 36 did not complete the jury questionnaire, and also indicated that his hearing was only fair and that his eyesight was poor; and Venireperson No. 35 was stricken because he indicated that he had "fair" health, and it came down to a choice between him and another female venireperson who spoke out more and articulated her thoughts well. The prosecutor also explained that the State made its strike from the list of alternates for no particular reason, that the venireperson stricken was the first one on the list, and any of the alternates would have been acceptable to them. The trial court found that, based on the State's explanations, there was no gender bias, and denied the request for a mistrial.

■ Appellant now argues that the State's explanations for the strikes were merely pretexts for discriminating against the excluded venirepersons based on their gender. He did not, however, raise that issue at trial, but instead allowed the selection of the jury to continue without further comment on the subject. Appellant was required to show that the State's proffered reasons for the strikes were merely pretextual and that the strikes were gender-motivated. *See Parker,*

836 S.W.2d at 939. Because he failed to do so, he has not preserved the matter for our review. *See State v. Pullen,* 843 S.W.2d 360, 365 (Mo.banc 1992), *cert. denied,* 510 U.S. 871, 114 S.Ct. 200, 126 L.Ed.2d 158 (1993). Likewise, Appellant failed to raise this issue in his motion for new trial. Accordingly, he requests that we review for plain error.

■ It is not clear that a plain error review of such claims is appropriate. *See State v. Sutherland,* 939 S.W.2d 373, 379–80 n. 1 (Mo.banc 1997), *cert. denied,* — U.S. —, 118 S.Ct. 186, 139 L.Ed.2d 125 (1997). Even assuming that plain error would be appropriate, we find none here. The State gave gender neutral explanations for its peremptory strikes. What a prosecutor observes about potential jurors in voir dire, as well as what is said, may form a legitimate nondiscriminatory basis for exercising a peremptory strike. *State v. Weaver,* 912 S.W.2d 499, 509 (Mo.banc 1995), *cert. denied,* — U.S. —, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996). This may include reluctance or hesitation in answering questions, as well as "lack of strength." *Id.* Certainly, health factors such as hearing and eyesight problems, can be valid, nondiscriminatory considerations in making peremptory strikes. Assuming a plain error review were appropriate here, we find none. Appellant's first point is denied.

In his second point, Appellant argues that the judgment should be reversed because the trial court did not, *sua sponte,* declare a mistrial when the prosecutor "vouched for the credibility of her witnesses" during closing argument. Appellant refers to comments made by the prosecutor during closing such as, "the State has produced the best in witnesses;" the prosecutor "felt very comfortable with the testimony" of the State's witnesses; and that D.H. was a "very credible young lady." He admits, however, that his attorney neither objected to the argument nor raised the matter in his motion for new trial. He therefore requests that we review the point for plain error.

■ In *State v. Silvey,* 894 S.W.2d 662, 670 (Mo.banc 1995), the Missouri Supreme

Court declined to grant a plain error review with reference to the state's closing argument, explaining that "plain error review 'should be used sparingly and does not justify a review of every trial error that has not been properly preserved for appellate review.'" *Id.* at 670 (citing *State v. McMillin*, 783 S.W.2d 82, 98 (Mo.banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990)). "Relief should rarely be granted on assertions of plain error as to closing argument because, 'in the absence of objection and request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention.'" *Silvey*, 894 S.W.2d at 670 (citing *State v. Clemmons*, 753 S.W.2d 901, 907–08 (Mo.banc 1988), *cert. denied*, 488 U.S. 948, 109 S.Ct. 380, 102 L.Ed.2d 369 (1988)). Under the circumstances here, we decline to grant a plain error review. Appellant's second point is denied.

The judgment in Case No. 19661 is affirmed.

## CASE NO. 21368

■ We now address Appellant's appeal from the denial, after an evidentiary hearing, of his *pro se* and amended post-conviction motions filed pursuant to Rule 29.15. Appellate review of the denial of post-conviction relief is limited to a determination of whether the motion court's findings and conclusions are clearly erroneous. *State v. Clements*, 849 S.W.2d 640, 646 (Mo.App. S.D. 1993). Appellant must prove his grounds for post-conviction relief by a preponderance of the evidence. *Id.* The motion court's findings and conclusions are clearly erroneous if, after reviewing the entire record, the appellate court is left with a definite and firm impression that a mistake has been made. *Id.*

■ Appellant contends that he received ineffective assistance of counsel at trial. We presume that counsel is competent, and that his challenged acts or omissions are sound trial strategy. *Sidebottom v. State*, 781 S.W.2d 791, 795–96 (Mo.banc 1989), *cert. denied*, 497 U.S. 1032, 110 S.Ct. 3295, 111 L.Ed.2d 804 (1990). In order to prevail on a claim of ineffective assistance of counsel, a movant must show both that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances, and that he was thereby prejudiced. *Sanders v. State*, 738 S.W.2d 856, 857 (Mo.banc 1987).

"Prejudice is shown by proof that, but for counsel's unprofessional errors, there was a reasonable probability that the result would have been different." *Sidebottom*, 781 S.W.2d at 796 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984)). "Prejudice is not presumed from a showing of deficient performance of counsel, but must be affirmatively proved." *Sidebottom*, 781 S.W.2d at 796. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding, [citation omitted] rather, defendant must show that there is a reasonable probability that, but for the errors by counsel, the fact finder would have had a reasonable doubt respecting punishment." *Id.*

■ In his first point on this appeal, Appellant contends that his counsel was ineffective by failing to "fully communicate with his client concerning his investigation, trial strategy and the status of five serious felony charges" prior to the trial. Appellant fails, however, to provide any specifics about how that alleged failure prejudiced his defense or the outcome of the case. A movant must show that he was prejudiced as a result of the alleged lack of contacts with counsel. *State v. Anthony*, 837 S.W.2d 941, 946 (Mo. App. E.D.1992). By failing to do so, he is not entitled to post-conviction relief. *Id.. See also State v. Villa–Perez*, 835 S.W.2d 897, 904 (Mo.banc 1992). We also note that the motion court found that trial counsel's testimony at the evidentiary hearing indicated numerous contacts with Appellant prior to trial. This point is denied.

In his second point, Appellant contends that his counsel was ineffective by "failing to properly preserve his objection and motion to quash the venire panel for failure to have any black venirepersons in the panel and further ... to preserve his objection to the state's use of its peremptory strikes in a gender discriminatory manner." It is clear from Appellant's point, and from the argument section of his brief, that the thrust of his complaint is trial counsel's failure to properly preserve the issues for review on appeal.

Post-conviction relief for ineffective assistance of counsel is limited to errors which prejudiced the movant by denying him a fair trial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. The failure to properly preserve *Batson* claims for review on appeal is not a claim cognizable under Rule 29.15. *State v. Harris*, 908 S.W.2d 912, 916 (Mo.App. E.D.1995); *State v. Loazia*, 829 S.W.2d 558, 570 (Mo.App. E.D. 1992). Accordingly, this point is also denied.

Appellant bases his third and final point on this appeal on the alleged ineffectiveness of his counsel in failing "to object, move to strike and request a mistrial after the state's prosecuting attorney made highly personalized, improper and prejudicial remarks during her closing argument ..." This point relates to the argument referred to in Appellant's second point in his direct appeal. The motion court found that the prosecuting attorney was commenting on the appearance and demeanor of the witnesses instead of vouching for their truthfulness, that an objection would have been without merit, and that there was no reasonable probability that the result would have been different had counsel objected to the argument.

The failure to object, even to objectionable argument, does not alone establish ineffective assistance of counsel. *State v. Taylor*, 831 S.W.2d 266, 272 (Mo.App.E.D. 1992). "The failure to object constitutes ineffective assistance of counsel only where the comment was of such a character that it resulted in a substantial deprivation of the accused's right to a fair trial." *Id.* It is not ineffective assistance of counsel to fail to make a meritless objection to preserve a meritless claim. *Id.*

It is true that a prosecutor may not make an argument to the jury that induces it to believe that he has special knowledge of facts that show that defendant is guilty. *State v. Anthony*, 577 S.W.2d 161, 162–63 (Mo.App. W.D.1979). The prosecutor does, however, have the right to comment on the evidence and the credibility of witnesses from the State's viewpoint. *Id.* at 163. "The golden thread running through all the cases on this subject is an inquiry into whether the prosecutor's statement of his belief appears to be based on the evidence which has been introduced before the jury." *Id.* Whether a prosecutor has exceeded the broad limits of closing argument which he is afforded is a matter within the sound discretion of the trial court. *State v. Bryant*, 741 S.W.2d 797, 799 (Mo.App. E.D.1987).

In the instant case, the argument to which Appellant refers was nothing more than comments on the credibility of witnesses from the state's viewpoint. The motion court did not clearly err in finding that an objection would have been meritless, and that there was no reasonable probability that the result would have been different if an objection had been made. Appellant's third point is denied.

The order of the motion court in Case No. 21368 is affirmed.

PREWITT and CROW, JJ., concur.