**STATE of Missouri, Plaintiff–
Respondent,**

v.

**S.D. Phillip KOENIG, Defendant–
Appellant.**

No. 24930.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 29, 2003.

Irene Karns, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen. and Dora A. Fichter, Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

S.D. Phillip Koenig ("Defendant") appeals his convictions for first-degree statutory rape (section 566.032) and first-degree child molestation (section 566.067).[1] Upon the jury's recommendation, the court sentenced Defendant to life imprisonment for the statutory rape charge and seven years' imprisonment for the child molestation count with the sentences running concurrently.[2] Generally, Defendant urges reversal upon the following grounds: (1) the State used its peremptory strikes to disqualify male jurors without a valid, gender-neutral explanation; (2) the trial court abused its discretion in disallowing Defendant access to discoverable information; and (3) the official record of the proceedings was inadequate to protect his rights to meaningful review due to errors and omissions. Finding no merit in these claims, we affirm the trial court's judgment.

## FACTS

We view the evidence in the light most favorable to the verdict. *State v. Johnson*, 95 S.W.3d 221, 222 (Mo.App. 2003). C.K. ("Victim") turned eleven years old on June 5, 1997. Between her eighth and eleventh birthdays, her father, Defendant, raped her at least five times per week.

Because the abuse was repeated over several years, Victim testified to two acts Defendant committed that she could *specifically* remember. On one occasion, Defendant awoke late at night, took Victim outside to his truck, and raped her. The other act involved Defendant forcing Victim to shower with him, and then, he made her perform oral sex upon him. These are the crimes for which Defendant was convicted. After a physical examination, the medical evidence supported Victim's testimony that she had been sexually abused.

At trial, Defendant denied he raped and molested his daughter and focused most of his evidentiary efforts on discrediting her testimony and the medical evidence. For instance, Defendant sought to highlight the fact that Victim denied the sexual abuse to several investigative agencies. On many of these occasions, however, Defendant was present. Victim testified she denied the abuse because she was scared Defendant would hurt her, she was humiliated, and she was ashamed. Moreover, during these interviews, she knew she was "going to go back home with the man that had done this to [her]" as no one promised to remove her from his custody. Victim first reported the abuse five months after she was taken from Defendant's custody. At this point, she "didn't think that [Defendant] could come get her now." Victim

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. In addition to the seven-year sentence, the jury also recommended the imposition of a fine in relation to the molestation charge. The court rejected this penalty.

testified it took her this amount of time to trust anyone who claimed that she was safe from her father.

After Defendant was convicted and sentenced, he filed this appeal. Additional facts are provided below when relevant to our discussion of Defendant's points on appeal.

### Point I: Alleged Gender–Batson Violation

In his first point, Defendant claims the trial court clearly erred when it overruled his objection to the State's use of its peremptory strikes. He alleges the State did not provide a gender-neutral explanation for striking venireman 32 and venireman 39. We disagree.

■ The use of peremptory strikes to exclude potential jurors from service based upon race, ethnic origin, or gender is prohibited as a violation of the Equal Protection Clause. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146, 114 S.Ct. 1419, 1430, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986); *State v. Marlowe*, 89 S.W.3d 464, 468[1] (Mo.banc 2002).[3] Missouri employs a three-part procedure for a trial judge to assess whether a strike was actually based upon race or gender. *State v. Brown*, 998 S.W.2d 531, 541 (Mo.banc 1999). As a fact-finder, the trial court's determination in this regard is given great deference and will not be overturned on appeal unless clearly erroneous. *Batson*, 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21; *Brown*, 998 S.W.2d at 541.

■ This standard of deference evolved because typically " 'the decisive question will be whether counsel's [gender]-neutral explanation for a peremptory challenge should be believed.' " *Miller–El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (quoting *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 1869, 114 L.Ed.2d 395 (1991) (plurality opinion)); *see also, State v. Bass*, 81 S.W.3d 595, 611[11] (Mo.App.2002). Oftentimes, the best (and perhaps only) evidence on the issue is the demeanor and credibility of the attorney exercising the challenge, i.e., a question solely within the province of the trial court. *Hernandez*, 500 U.S. at 365, 111 S.Ct. at 1869; *Bass*, 81 S.W.3d at 611.

■ To the extent it is relevant in this case, the three-part test to be used by a trial court follows. First, Defendant must timely object and identify the cognizable gender group to which the struck venireperson belongs. *Brown*, 998 S.W.2d at 541[9]; *State v. Williams*, 24 S.W.3d 101, 120 (Mo.App.2000). Second, the State must then give a reasonably specific explanation for the strike that is gender-neutral. *Brown*, 998 S.W.2d at 541[10]; *Williams*, 24 S.W.3d at 120. Finally, Defendant, in order to prevail, must show that the State's proffered reasons are merely pretextual, and the strike is actually based upon gender. *Brown*, 998 S.W.2d at 541[11]. The burden of production shifts to the state at the second stage, but the burden of persuasion always remains with the defendant. *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995).

■ At the second stage, the state's explanation for the strike only has to be facially gender-neutral, and unless a discriminatory intent is inherent in the expla-

---

**3.** " '[T]he substance and procedures established by the *Batson* line of cases are equally applicable to challenges made to peremptory strikes based on gender bias.' " *State v.* *Smith*, 5 S.W.3d 595, 597 (Mo.App.1999) (quoting *State v. Hayden*, 878 S.W.2d 883, 885 (Mo.App.1994)).

nation, the court must deem such to be gender-neutral, even if it is not persuasive or plausible. *Elem,* 514 U.S. at 768, 115 S.Ct. at 1771; *Williams,* 24 S.W.3d at 120. It is only at the third stage that "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Elem,* 514 U.S. at 768, 115 S.Ct. at 1771. In considering the pretextual nature of an explanation, the chief consideration is the plausibility of the state's explanation in light of the totality of the circumstances. *State v. Parker,* 836 S.W.2d 930, 939[13] (Mo.banc 1992).[4]

■ Initially, we note that the procedure for making and adjudicating a *Batson* challenge was not followed here. Although *Batson* leaves it to lower courts to develop their own procedures, the *Parker* court declared that a *Batson* challenge should be made and decided prior to the venirepanel's discharge. *Parker,* 836 S.W.2d at 937. In this case, the procedures and hearings used to decide Defendant's gender-*Batson* claim were in two parts (one after voir dire and one after the trial), but neither party complains of these methods, either at trial or on appeal.

Following voir dire, the State used five of its six peremptory strikes to exclude male jurors. Thereon, defense counsel complained that the strikes were gender based in violation of *Batson* and *J.E.B.* The prosecutor responded that the strikes "were not based upon anything other than the statements made by the individuals, their general appearance." The trial judge then noted that Defendant used five of its strikes against females. During the additional discussion about juror strikes, Defendant never claimed that the State's reasons for striking five males were pretextual. The post-voir dire colloquy ended when the court overruled Defendant's objection to the State's peremptory strikes and seated the jury.

Gender-based *Batson* issues were presented to the trial court the second time during argument on Defendant's motion for a new trial. A thorough review of the record of that hearing convinces us that the failure, by either party, to follow the *Parker* approved procedure immediately after voir dire was cured at the post-trial hearing. Specifically, Defendant renewed his objection that the State's strikes were gender based. The State responded by explaining alleged non-gender related reasons for its strikes. In rebuttal, Defendant stated why he claimed the State's proffered reasons were pretextual. We need not, however, recount the entire discussion because on appeal Defendant's only claim of *Batson* violations relate to veniremen 32 and 39.

At the post-trial hearing, the State told the trial judge it struck venireman 39 because he said "during the voir dire process that he had difficulty with sitting over the set time that was required of him to deliberate on this case.... When people say, 'Gosh, I really don't want to be here,' I take them at their word and I don't want them here." Defendant answered that others, with similar concerns, were not

4. In making this credibility determination, a court should consider: (1) the existence of similarly situated jurors who were not struck; (2) the degree of logical relevance between the explanation and the case in terms of the type of crime charged, the nature of the evidence to be adduced, and the potential punishment; (3) the prosecutor's demeanor or statements during voir dire; (4) the demeanor of the excluded venirepersons; (5) the court's past experience with the prosecutor; and (6) any other objective factors bearing on the state's motive to discriminate including conditions in the community and the race or gender of the defendant, victim, and material witnesses. *Parker,* 836 S.W.2d at 940; *State v. Heckenlively,* 83 S.W.3d 560, 565 n. 2[6] (Mo.App.2002).

struck. He did not, however, state which venirepersons had made similar claims.

As to venireman 32, the State told the trial judge it struck him because he was silent throughout voir dire. Defendant countered that three female jurors who were similarly situated, i.e., they also remained silent, were not struck by the prosecution.

After hearing these explanations, the court again overruled Defendant's *Batson*-based arguments. As such, the court implicitly found the State's reasons persuasive and the prosecutor credible. This finding is not clearly erroneous.

First, addressing Defendant's claim regarding venireman 39, we note that, at the second hearing, Defendant's pretext argument was that others, similarly situated, were not struck. On appeal, however, Defendant does not make this argument to demonstrate pretext. To the contrary, Defendant presents a new argument that venireman 39 *never made* a particular comment, i.e., it would be difficult for him to sit through the trial. Defendant is correct in this regard; however, he did not raise this issue before the trial court.[5] Consequently, he may not challenge the State's explanation on appeal as the issue

is unpreserved for appellate review.[6] *Bass*, 81 S.W.3d at 610–11[12].

▉ Regarding venireman 32, the State claimed he was struck because he was silent throughout voir dire. Silence is a permissible, facially neutral explanation because "[t]he state should not be required to take a risk on a prospective juror about whom little information is known." *State v. Barnett*, 980 S.W.2d 297, 302[5] (Mo. banc 1998). Defendant countered that three female jurors who were similarly situated, i.e., they also remained silent, were not struck by the prosecution. This is a crucial factor when considering pretext, but it is not dispositive. *Marlowe*, 89 S.W.3d at 469.

▉ At the third stage, if an "implausible or fantastic" justification is given by the state (silence here), "the issue comes down to whether the trial court finds the prosecutor's [gender]-neutral explanations to be credible." *Miller-El*, 123 S.Ct. at 1040. Credibility can be measured by many factors including the prosecutor's demeanor, the degree of reasonableness of the explanation, and whether the proffered rationale has some basis in trial strategy. *Id.* " 'The credibility of the prosecutor's explanation goes to the heart of the equal protection analysis, and once that has been

---

5. More than that, Defendant makes only a three-sentence reference to this particular juror in the argument section of his brief. Also, he provides no case law to support his position in relation to venireman 39. This alone would constitute a waiver of his gender-*Batson* claim as to this potential juror. *State v. Nicklasson*, 967 S.W.2d 596, 618[67] (Mo. banc 1998).

6. Even assuming, *arguendo*, that the issue was preserved, we still deny this prong of Defendant's point. The issue in a *Batson* challenge "is not whether the reason given for a strike is true in fact, but whether the striking party believes it to be true, even if only a hunch, and the strike is not inherently racial on its

face." *Bass*, 81 S.W.3d at 611[14]; *see also State v. Smith*, 944 S.W.2d 901, 912–13[12] (Mo.banc 1997) (holding *belief* of prosecutor that potential juror *might* know crucial witnesses was sufficient explanation to defeat *Batson* challenge). Health problems, inattentiveness, and attitude are proper gender-neutral explanations. *Brown*, 998 S.W.2d at 546[31]; *State v. Link*, 965 S.W.2d 906, 910 (Mo.App.1998). Here, the state gave a facially gender-neutral reason that the court deemed credible without refutation by Defendant. Based on these facts, this court cannot upset that factual finding on appeal as it is not clearly erroneous. *Brown*, 998 S.W.2d at 541–46.

settled, there seems nothing left to review.'" *Id.*, 123 S.Ct. at 1041 (quoting *Hernandez*, 500 U.S. at 367, 111 S.Ct. at 1870).

Here, the silence of venireman 32 was highly relevant to the case and an entirely reasonable explanation for exclusion. As stated before, we do not require the State "to take a risk on a prospective juror about whom little information is known." *Barnett*, 980 S.W.2d at 302.

In addition to his stated explanation for the strike, the prosecutor also claimed, "First off, I want to state for the record ... I have conducted myself throughout my life as a non-racial, non-biased person. ... I will assert that as to each strike I made, it was never based upon any gender determinations." From a reading of these statements, the prosecutor obviously appeared genuine to the court.

Also relevant, during voir dire, there was no evidence the prosecutor did anything to indicate a motive to strike venirepersons based on gender issues. *See, e.g. Miller–El*, 123 S.Ct. at 1042–44 (determining that relevant factors at third stage to prove pretext can include (1) peremptory strikes were used to exclude 91% of prospective African American jurors, (2) "disparate questioning," (3) "jury shuffling," and (4) historical evidence of discrimination by prosecutor's office); *Parker*, 836 S.W.2d at 940. Another relevant factor was that the prosecutor struck a female juror because he did not have a "decent rapport" with her. A prosecutor's exercise of other strikes is also relevant to an extent. *Id.; State v. Smulls*, 935 S.W.2d 9, 16 (Mo.banc 1996). The court also considered the gender of certain crucial witnesses at trial, i.e., a defense expert was female

while the State's witness in rebuttal was male. *See Parker*, 836 S.W.2d at 940.

When viewing the foregoing in light of the fact that other venirepersons similarly situated were not struck, the trial court did not clearly err in accepting the State's gender-neutral explanation. Defendant's gender-*Batson* objection was properly overruled. Point denied.

### Points II and III: Alleged Discovery Violations

In his second point, Defendant alleges the trial court abused its discretion by "withholding from [Defendant]" counseling records that the court "held *in camera*" because he was "entitled" to the records under section 210.150.2(5).[7] Alternatively, he claims the court abused its discretion by failing to order the State to provide the records pursuant to Rule 25.03.[8] He alleges that this deprivation violated his due process rights. Apparently as an alternative to Point II, Defendant's third point requests that this court "obtain and review the sealed record to determine if the trial court erred in finding that there was no evidence of value to the defense." Because these two points are obviously interrelated, we discuss them together.

In the argument part of Defendant's brief, he points to four motions wherein he requested disclosure of the counseling records. A review of such motions reveals that none alleged the constitutional deprivation that Defendant now claims on appeal. This was not a mere oversight because other discovery requests specifically mentioned constitutional provisions. The first allegation of a due process violation, relating to the counseling records, is found in his motion for new trial.

---

7. This statute allows access by "alleged perpetrators" to Division of Family Services investigation records of abuse under investigation. Section 210.150.2(5).

8. All rule references are to Supreme Court Rules (2001), unless otherwise indicated.

Consequently, Defendant has waived any alleged constitutional violation by failing to raise the issue at the earliest opportunity. *See, e.g. State v. Naucke,* 829 S.W.2d 445, 460[16] (Mo.banc 1992) (non-constitutional trial error must be raised at earliest opportunity if constitutional violations are claimed on appeal); *State v. Bradshaw,* 81 S.W.3d 14, 25 n. 9 (Mo.App.2002) (failure to change venue); *State v. Crow,* 63 S.W.3d 270, 273[1] (Mo.App.2001) (failure to follow administrative procedure); *State v. Hooker,* 536 S.W.2d 487, 491 (Mo.App. 1976) (discovery violations).

■■■ Defendant's assertion that his due process rights were violated because of the trial court's handling of discovery issues is unpreserved for yet another reason. In his point relied on, Defendant fails to state why he was prejudiced by the alleged discovery violations. Moreover, the argument section of his brief is devoid of any meaningful claim of prejudice due to non-disclosure of records. He simply provides this court with conclusory statements of fundamental unfairness and prejudice. A trial court only commits reversible error in handling section 210.150 or Rule 25.03 discovery requests when a defendant shows he or she was prejudiced by the ruling. *State v. Cook,* 5 S.W.3d 572, 575[2] (Mo. App.1999); *State v. Davison,* 884 S.W.2d 701, 703–04 (Mo.App.1994). Failure to claim prejudicial error in the point relied on preserves nothing for review. *State v. Holt,* 603 S.W.2d 698, 703 (Mo.App.1980). Likewise, conclusory allegations of prejudice will not suffice in the argument section of a brief. *State v. Mitchell,* 41 S.W.3d 574, 577 (Mo.App.2001).

■■■ Assuming *arguendo* that Defendant's Point II claim was properly preserved, we would still find no error because Defendant's due process rights were adequately protected. First, a plain reading of section 210.150.2(5) reveals that the *trial court* is under no duty to disclose these records to a defendant. The statute clearly applies to the release of the records by the *Division of Family Services.* Predicating any *trial court error* on *subsection (5)* is misguided and unavailing.

Second, the trial court did retrieve and review the subject documents in camera, presumably pursuant to section 210.150.2(6). Having done so, the court concluded that the requested material contained no relevant information that would aid the defense and refused to make them available to Defendant. Whether the trial court abused its discretion in handling Defendant's discovery request in this fashion is governed by *Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), and *Davison,* 884 S.W.2d 701. Those cases hold that a defendant's due process rights are not violated by an in-camera review and a denial of disclosure if no relevant information is contained therein.

In accordance with *Davison,* we have carefully reviewed the records on appeal and agree with the trial court, i.e., the records contain no useful or relevant information. In fact, the overwhelming majority of the counseling records discuss Victim's current mental state and her relationship with her foster family. Moreover, Defendant argued to the *trial court* that the records contained impeachment and substantive evidence relating to prior statements and denials. No such statements are contained therein. At best, one could use the records to demonstrate that Victim did not discuss the abuse for several months during counseling. This was fully admitted at trial. The State's compelling interest in confidentiality overrides Defendant's "need" to discover cumulative evidence. Points denied.

### Point IV: Adequacy of Official Record on Appeal

██ In his final point on appeal, Defendant alleges the trial court erred in accepting the transcript prepared by a reporting service ("Holliday") because the record is inadequate to protect his rights during direct and post-conviction appeal in that it contains significant errors and omissions.[9] For relief, Defendant requests a new trial.

 Defendant is entitled to a full and complete transcript on appeal. *State v. Christeson*, 50 S.W.3d 251, 271[48] (Mo. banc 2001), *cert. denied*, 534 U.S. 978, 122 S.Ct. 406, 151 L.Ed.2d 309. An incomplete or inaccurate record, however, does not automatically require reversal. *State v. Middleton*, 995 S.W.2d 443, 466[74] (Mo. banc 1999). Defendant is only entitled to relief if he exercised due diligence to correct the deficiencies, *and* he was prejudiced by the alleged defects. *Christeson*, 50 S.W.3d at 271[48]. "Under Rule 30.04(h), omissions and misstatements in the record may be corrected by stipulation of the parties or by an order of the appellate court directing that the defect be corrected." *Id.* at 272.

For purposes of this discussion only, we assume that Defendant exercised due diligence in correcting the errors and omissions; however, he has wholly failed to demonstrate prejudice resulting from these alleged deficiencies. With one exception, Defendant has not identified the inaccuracies or omissions; he fails to specify the mistakes or how those affect his appeal. "He leaves this Court with the chore of pinpointing each alleged error and then discerning any prejudicial impact." *Christeson*, 50 S.W.3d at 272.

We have carefully reviewed the transcript and pinpointed the "inaudibles" that are (apparently) the focus of Defendant's complaints. There are 141 inaudibles in the 830–page transcript. They are substantively insignificant. We note that a majority occurred while arguments were had at the bench. From examining the context and the court's rulings, the inaudibles, *in no way*, affect Defendant's rights to direct or post-conviction review. Defendant has shown no prejudice due to these "omissions." *Id.* at 272; *State v. Borden*, 605 S.W.2d 88, 91–92 (Mo.banc 1980) (50 pages of testimony and argument missing from 1,068–page transcript).

This does not end our inquiry, however, because Defendant specifically points to one error. In the first transcript, Defendant was asked if he was aware "when [he] took [Victim] to the exams that *there was an allegation* that [he] had committed sexual crimes against her[;]" he answered, "yes." (Emphasis added.) In the second (and official) transcript, the question is shown as whether he was aware "when [he] took [Victim] to the exams that [he] *had committed* sexual crimes against her[,]" and he answered in the affirmative. (Emphasis added.) On appeal, Defendant refers to this as a "Perry Mason moment," and he claims this is prejudicial to "his right to review on direct appeal and other post-conviction procedure in state and federal court." We agree with his cultural characterization of the second transcript, but we disagree that this is prejudicial.

9. The office of state courts administrator prepared the first transcript from the sound recordings at trial. Defendant's trial counsel refused to approve this version because of inaccuracies and omissions. A hearing was held on the matter, and the trial court ordered a transcript prepared by Holliday Reporting Services, Inc. Once again, trial counsel refused to approve the record. The trial court found that no further efforts could be made to improve the record and adopted the Holliday transcripts as the official record.

This court has not used this question and answer in any determination on appeal. It was simply irrelevant to the questions presented here. Consequently, the allegedly mistaken inculpatory answer by Defendant, as found in the Holliday transcript, was non-prejudicial as it was not considered by this court.

■■■■ As to Defendant's other claim of prejudice, i.e., that the erroneous version will affect future court determinations, we could only reach that conclusion by indulging in pure speculation. This we will not do. Absent some exigency, Missouri appellate courts will not predetermine an issue, dependent upon some contingency or uncertainty, that may arise in the future on facts that may be different from those that now exist or may with certainty be foreseen. *Gershman Invest. Corp. v. Danforth*, 475 S.W.2d 36, 38 (Mo.banc 1971). Our refusal to reverse the judgment of the trial court based on speculative future events is confirmed by the fact that Defendant's inculpatory answer in the "official" transcript could only prejudice his post-conviction remedies *if* a post-conviction court uses the statement as a factor in finding that evidence of Defendant's guilt was overwhelming. Given the state of this record, the unlikelihood that Defendant expressly admitted his guilt to the jury as reported in the "official" transcript, and our disposition of Defendant's Point IV claim, we believe no post-conviction court will use Defendant's questionable inculpatory answer for that purpose. Point denied.

Defendant's convictions and sentences are affirmed.

JOHN E. PARRISH, J., concurs in separate opinion.

RAHMEYER, C.J.-P.J., concurs.

JOHN E. PARRISH, J., concurring.

I concur in the result reached with respect to Point I. I concur in all other parts of the opinion but write separately with respect to an issue related to Point IV that, in my opinion, warrants comment.

*State v. Parker*, 836 S.W.2d 930, 937 (Mo. banc), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), observed that the release of unselected members of the venire, together with problems and difficulties created thereby, governs the timeliness of a *Batson*-type motion. *Parker* explained that if the state is denied a peremptory strike by reason of a *Batson*-type motion, it may still exercise fully peremptory strikes it would otherwise be denied by properly applying them to other venirepersons so long as the venire has not yet been discharged. 836 S.W.2d at 936–37.

The majority opinion explains the procedure required to exercise a *Batson*-type motion—a three-part procedure. It suggests that this procedure was not completed until after the trial of this case, the completion of the process occurring at defendant's argument of his motion for new trial. In my opinion, the trial court abused its discretion in permitting defendant to take further steps to comply with the three-part procedure he failed to complete before the venire had been discharged.[1] I would hold that defendant

1. Absent a need to present testimony directed to issues raised in a motion for new trial, verbatim record of that hearing is not required. The procedure approved by the majority opinion would encourage trial courts to make records of arguments presented at hearings on motions for new trial. This should not be necessary. Issues of law are what are decided in addressing motions for new trial. Any fact basis necessary to resolve those issues should be gleaned from the trial record,

failed to follow the procedure required to sustain a *Batson*-type motion by not completing the required procedure prior to when the venire was discharged; that defendant, therefore, waived the objection he posed to the state's exercise of its peremptory challenges. For that reason, I concur in the result reached as to Point I.

I concur in the majority opinion in all other respects. I write separately, however, with respect to Point IV out of a concern peripheral to the denial of that claim of error. The transcript on appeal was prepared from a magnetic tape recording. As this case was tried by an associate circuit judge who, unlike circuit judges, are not provided official court reporters, the record of trial proceedings was made by means other than by court reporter. Although 141 "inaudibles" were noted in the trial transcript, fortunately they did not dispel the accuracy of the record with respect to issues that would require a new trial. Nevertheless, transcripts that omit that amount of the record are not acceptable.

Magnetic tape recording devices cannot make known an inability to record sounds they do not register. Court reporters can make known an inability to hear testimony and other matters so that statements that would otherwise be "inaudible" may be restated. The 141 "inaudibles" in this record suggest that there are types of cases in which magnetic tape recording devices should not be used. Many jury trials, due to the number of participants and the manner in which testimony may be presented, do not lend themselves to a record made by machine that cannot make known the shortcomings of lawyers or witnesses (or even judges) who may not speak in a manner that can be recorded. Fortunately, the shortcomings identified in the majority opinion do not require a new trial in this case. Future cases with such omissions may not be so fortunate. The type of record used at trials should be adequate for the circumstances of the case being tried.

not a further transcription of arguments made

days and weeks after it was completed.